# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47676-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SHANNON EDWARD MEYER, | |
| Appellant. | |

MAXA, A.C.J. – Shannon Meyer appeals his conviction following a bench trial of attempted first degree child rape,[1] and also challenges two community custody conditions included in his sentence. He argues that there was insufficient evidence to support his conviction and that his defense counsel was ineffective in failing to object to certain evidence and conducting an inadequate cross-examination of the victim. He also argues, and the State concedes, that the trial court erred in imposing community custody conditions requiring a dependency evaluation and a drug and alcohol evaluation because his offense did not involve drugs or alcohol.

We hold that sufficient evidence supports Meyer's conviction and that defense counsel provided effective representation. But we hold that the trial court improperly imposed the

---

[1] The trial court also convicted Meyer of attempted second degree rape. But the trial court vacated that conviction for sentencing purposes on double jeopardy grounds, subject to being revived after appeal. Meyer appealed this conviction even though it was dismissed. Because we affirm the attempted first degree child rape conviction, Meyer's appeal of the attempted second degree rape conviction is moot.

challenged community custody conditions because there was no evidence showing that drugs or alcohol contributed to the offense. Accordingly, we affirm Meyer's conviction of attempted first degree child rape, but we remand for correction of his judgment and sentence by striking the challenged community custody conditions.

FACTS

In June 2011, Meyer stayed with his sister, Teresa Meyer, for about three weeks. Teresa[2] lived with her five-year-old daughter, KJC. During this time, Meyer took KJC into the kitchen, lowered his sweat pants, and shoved her face into his "privates." Clerk's Papers (CP) at 11. KJC tried to push Meyer away, but he again pulled her face into his penis.

In 2012, KJC began living with foster parents, Rob and Sandy Carpenter. In 2013, KJC disclosed to Whitney Hall, her counselor, that her uncle had "shoved her face into his privates." CP at 11. KJC then disclosed the incident to Sandy Carpenter. KJC later participated in a forensic interview with Emily Watson.

The State charged Meyer with first degree child rape and second degree rape, and, as alternatives, two counts of first degree child molestation. Following a hearing on the admissibility of child hearsay, the trial court allowed Sandy Carpenter, Hall, and Watson to testify as to statements KJC made to them about the incident. During the bench trial, the State played a video recording of Watson's forensic interview of KJC.

The trial court found Meyer guilty of attempted first degree child rape and attempted second degree rape, but dismissed the attempted second degree rape conviction for sentencing

---

[2] We refer to Teresa Meyer by her first name to avoid confusion. No disrespect is intended.

purposes. As part of its sentence, the trial court imposed community custody conditions requiring Meyer to complete a chemical dependency treatment evaluation and attend a drug and alcohol evaluation and obtain any recommended treatment.

Meyer appeals his conviction and the imposition of the community custody conditions.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Meyer argues that there was insufficient evidence to support his conviction for attempted first degree child rape.[3] We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume the truth of the State's evidence and draw all reasonable inferences from the evidence in favor of the State. *Id*. at 106. We defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *Id*.

The trial court found Meyer guilty of attempting to violate RCW 9A.44.073, which requires proof that the defendant had sexual intercourse with someone less than 12 years old who was not married to the defendant, and that the defendant was at least 24 months older than the victim. Attempted child rape requires, among other things, proof that the defendant intended to have sexual intercourse with a child and took a substantial step toward having such intercourse. RCW 9A.28.020(3)(a); *State v. Johnson*, 173 Wn.2d 895, 907-08, 270 P.3d 591 (2012). The

---

[3] Meyer raises this same claim in his statement of additional grounds (SAG), therefore we do not address his SAG claim separately.

only disputed element here is whether the proof shows that Meyer intended to have sexual intercourse with KJC and took a substantial step toward that end.

Meyer argues that the evidence was insufficient because KJC gave inconsistent testimony, there was evidence of coaching, there was no corroborative evidence, and there was no evidence of grooming or luring the victim. But the evidence introduced at trial was sufficient to support the trial court's finding of attempted sexual intercourse.

KJC testified that Meyer pulled her into the kitchen, pulled down his pants, shoved her face onto his privates, and rubbed his privates on her face. Sandy Carpenter testified that KJC told her after disclosing the abuse to Hall that Meyer had pushed her head into his lap or crotch. Hall testified that KJC disclosed during counseling that Meyer "put her face in his nut sack." Report of Proceedings (RP) at 218-19. Finally, the State presented a video recording of Watson's forensic interview, in which KJC described Meyer pulling his pants down, shoving her face into his privates, and telling her not to tell anyone.

Meyer denied that this incident happened and Teresa denied KJC's claim that she told Teresa immediately afterward. But the trial court's decision rested on its assessment of KJC's credibility. We defer to that assessment and do not make our own credibility determinations. *Homan*, 181 Wn.2d at 106. Similarly, the lack of corroborative testimony other than KJC's statements and the lack of grooming behavior are merely factors the trial court could have considered in assessing the evidence.

Viewing the evidence in a light most favorable to the State, any rational trier of fact could have found that Meyer took a substantial step toward having sexual intercourse with KJC when

he thrust his penis twice into KJC's face. We hold that the evidence was sufficient to support the conviction.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Meyer argues that his defense counsel provided ineffective assistance of counsel by failing to (1) object to the admissibility of statements KJC made during her forensic interview about Meyer lying, and (2) extensively cross-examine KJC about and emphasize during closing argument her statements that she did not remember the incident. We hold that defense counsel's failure to object to the statements about Meyer lying was not prejudicial and his tactical decisions regarding cross-examination and closing argument did not constitute ineffective assistance of counsel.

We review claims of ineffective assistance of counsel de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id*. at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the trial would have been different. *Id.* at 34.

We begin our analysis with a strong presumption that counsel's performance was effective. *Id.* at 33. To rebut this presumption, the defendant must establish the absence of any " '*conceivable* legitimate tactic explaining counsel's performance.' " *Id.* (emphasis added) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). If defense counsel's

conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient. *Grier*, 171 Wn.2d at 33.

### 1. Statements About Meyer Lying

Meyer argues that trial counsel improperly failed to object to the admission of the statements from KJC's forensic interview indicating that Meyer lied. We disagree.

In her forensic interview, KJC stated that Meyer lied to Teresa after the incident and also stated that Meyer was the person who was lying, not KJC. Meyer argues that these statements were objectionable because a witness is not allowed to offer opinion testimony about the veracity of the defendant. *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009). The reason for this rule is that weighing the credibility of witnesses is the province of the fact-finder and not the witnesses. *State v. Rafay,* 168 Wn. App. 734, 805, 285 P.3d 83 (2012).

Even if defense counsel should have objected to these statements, Meyer fails to show any prejudice. This was a bench trial and a trial court judge is presumed to ignore inadmissible evidence. *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). So we assume that the trial court gave no improper weight to this testimony in assessing witness credibility. Further, this is not a situation that carried the aura of credibility as when a police officer expresses his or her opinion about the truthfulness of another witness's testimony. *See State v. Kirkman,* 159 Wn.2d 918, 928, 155 P.3d 125 (2007). As a result, defense counsel's failure to object to the admission of KJC's statements did not have any prejudicial effect on the fairness of his trial. Therefore, we hold that Meyer's ineffective assistance of counsel claim on this basis fails.

2.    Cross-Examination and Closing Argument

Meyer argues that defense counsel was ineffective in failing to extensively cross-examine KJC about and emphasize in closing argument her statements that she did not remember the incident. Specifically, he argues that defense counsel should have questioned KJC about what her foster mother told her before the forensic interview. We disagree.

In her forensic interview, KJC made statements to Watson indicating that she did not remember the incident until her foster mother told her what Meyer allegedly had done. Meyer argues that defense counsel should have cross-examined KJC regarding these statements.

How to cross-examine a witness generally is a matter of judgment and strategy. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004). Meyer argues that defense counsel should have questioned KJC about these statements, but there may have been tactical reasons for not confronting KJC. KJC may have emphasized on further cross-examination that she did have a clear memory of the incident, despite her statements in the interview. And even if she did not, aggressively cross-examining the child victim may not be the best strategy in an attempted child rape case. Finally, KJC's statements suggesting that she did not remember the incident were clear in the record even without any cross-examination. We hold that defense counsel was not deficient in failing to cross-examine KJC regarding her statements.

Meyer also argues that defense counsel should have emphasized KJC's statements during closing argument. But again, how to argue a case necessarily involves tactical decisions. *Grier*, 171 Wn.2d at 33–34. During closing argument, defense counsel emphasized the unreliability of KJC's statements, pointed out inconsistent statements, and attributed them to KJC's disorganized, confused, and fragmented thinking. This was consistent with a legitimate defense

strategy to undermine KJC's credibility. Defense counsel may have had a strategic reason for not emphasizing KJC's forensic interview. Based on the strong presumption that defense counsel's performance was effective, we hold that defense counsel's closing argument was not deficient.

Therefore, we hold that Meyer's ineffective assistance of counsel claim on this basis fails.

### 3. Cumulative Error

Meyer argues that even if any one instance of ineffective assistance of counsel does not warrant reversal, the cumulative effect of defense counsel's conduct does warrant reversal. "The cumulative error doctrine applies when several errors occurred at the trial court level to deny the defendant a fair trial, even though no single error alone warrants reversal." *State v. Lewis*, 156 Wn. App. 230, 245, 233 P.3d 891 (2010). Meyer has failed to show that defense counsel made objectively unreasonable decisions or unfairly prejudiced Meyer in any way. Therefore, we reject his cumulative error argument.

## C. SENTENCING CONDITIONS

Meyer argues, and the State concedes, that the trial court improperly imposed community custody conditions that were unrelated to his offense. We accept the State's concession.

The trial court is authorized to impose "crime-related prohibitions" at sentencing. Former RCW 9.94A.700(5)(e) (2003).[4] A crime-related prohibition is one that "directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW

---

[4] Now codified at RCW 9.94B.050(5)(e).

No. 47676-2-II

9.94A.030(13) (2006).  A trial court abuses its discretion if it imposes a sentencing condition without statutory authority.  *State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003).

Here, the trial court imposed community custody conditions requiring Meyer to complete a chemical dependency treatment evaluation and attend a drug and alcohol evaluation and obtain any recommended treatment.  But there was no evidence in the record that alcohol or drug use contributed to the charged offenses.  Therefore, we remand for the sentencing court to strike these community custody conditions from Meyer's judgment and sentence.

CONCLUSION

We affirm Meyer's conviction of attempted first degree child rape, but we remand for correction of his judgment and sentence by striking the challenged community custody conditions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, .J.

9