2015 JUL 20 AM 10: 3_



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71499-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRED CHARLES MYERS, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 20, 2015 |
| | ) | |

VERELLEN, A.C.J. — Fred Myers challenges his conviction for third degree assault, arguing the State failed to present sufficient evidence to support his conviction and his attorney provided ineffective assistance. We disagree and affirm. However, we accept the State's concession that the sentencing court erred by imposing mental health treatment as a community custody condition and remand for the court to strike the condition.

## FACTS

On March 4, 2013, at approximately 3:00 a.m., the Marysville Police Department sent officers to a large apartment complex in response to a call reporting a disturbance involving a man banging on the walls. Officer Michael Young and Sergeant Rick Sparr went to the apartment indicated in the report and found the door wide open and personal belongings piled up as if they had been thrown out the door. When Officer Young knocked on the open door and identified himself as a police officer, Fred Myers came around a corner inside the apartment and continued "throwing stuff around,"

moving piles, and "basically collecting everything he owned."[1] Myers told Officer Young he was moving out because "his wife was cheating on him."[2] Officer Young asked Myers to "keep it down" because it was late and the noise was bothering the neighbors.[3] Myers agreed, and Officer Young turned to leave.

As Officer Young started down the stairs outside the apartment, Officer Pat Connelly called on the radio and said that he had probable cause to arrest Myers for a domestic violence incident involving Myers's wife. Officer Young returned to the apartment and asked Myers to speak to him again. Myers came within "a couple feet" of where Officer Young stood, "outside right at the doorway" of the apartment.[4] Myers "was agitated" and Officer Young could smell the odor of alcohol.[5] Officer Young asked Myers if he had been drinking and asked about the incident reported by his wife. Myers admitted he had been drinking, but denied committing a crime against his wife. Myers became more agitated and "bizarre" and began to "rant about his past, his history," and his mental health.[6]

Officer Young then stepped into the hallway inside the apartment and said, "Fred, turn around. You're under arrest."[7] Myers turned around and put his hands behind his back. After Officer Young fastened the handcuffs, Myers became "really

---

[1] Report of Proceedings (RP) (Dec. 2, 2013) at 107-08.

[2] Id. at 108.

[3] Id.

[4] Id. at 109.

[5] Id. at 109-10.

[6] Id. at 110.

[7] Id. at 112.

2

upset" and began to try to turn around to face the officers.[8] As Officer Young and Sergeant Sparr tried to restrain Myers and calm him, Myers began kicking backwards with his left leg and kicked Officer Young in the "shin pretty good a couple of times."[9] Myers also turned his head and tried to bite Officer Young's arm. After three officers used their body weight to hold him down on the floor, Myers stopped fighting.

The State charged Myers with third degree assault against Officer Young under RCW 9A.36.031(1)(g), which criminalizes "[a]ssault[ing] a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." Prior to trial, Myers waived his right to a CrR 3.5 hearing and stipulated to the admissibility of statements he made to the officers during the incident.

At trial, the State presented the testimony of Detective Connelly, Officer Young, Sergeant Sparr, and Officer Matthew Mishler. All four testified they were on duty as police officers on March 4 and were dispatched to investigate a call reporting a disturbance at Myers' apartment. The trial court instructed the jury, in pertinent part:

> A person commits the crime of Assault in the Third Degree when he or she assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.
>
> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive, if the touching or striking would offend an ordinary person who is not unduly sensitive.
>
> To convict the defendant of the crime of Assault in the Third Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[8] Id. at 114.

[9] Id. at 116.

3

(1) That on or about the fourth day of March, 2013 the defendant assaulted Michael Young;

(2) That at the time of the assault, Michael Young was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and

(3) That any of these acts occurred in the [s]tate of Washington.[10]

In closing, defense counsel argued that Myers did not intend to kick Officer Young, but acted like an "animal" and "react[ed] without thinking" when he was "already agitated," "highly emotional," and "drunk."[11] The jury found Myers guilty as charged, and the trial court imposed a standard range sentence.

Myers appeals.

## ANALYSIS

Myers first challenges the sufficiency of the evidence, arguing that the State failed to prove that Officer Young was performing his official duties at the time of the assault. We disagree.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.[12] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[13] "[A]ll reasonable

---

[10] CP at 37-39.

[11] RP (Dec. 3, 2013) at 166.

[12] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[13] Id.

4

inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[14] Circumstantial evidence and direct evidence are deemed equally reliable.[15] We leave credibility determinations to the trier of fact and will not review them on appeal.[16]

Our Supreme Court has held that "official duties," as stated in RCW 9A.36.031(1)(g), "encompass all aspects of a law enforcement officer's good faith performance of job-related duties, excluding conduct occurring when the officer is on a frolic of his or her own."[17] The court has rejected efforts to adopt an "overly restrictive definition of the term 'official duties'" based on the constitutional validity of an arrest.[18] "Whether an officer may have made an incorrect judgment regarding one or more of a suspect's myriad constitutional rights in no way determines whether that officer was . . . 'performing his official duties.'"[19] "Cases in which an officer is engaged in a crime of violence upon a citizen are distinguishable from situations wherein an officer may inadvertently infringe upon some constitutional rights of a person."[20] "RCW 9A.36.031(1)(g) includes assaults upon law enforcement officers in the course of performing their official duties, *even if making an illegal arrest.*"[21]

---

[14] Id.

[15] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[16] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[17] State v. Mierz, 127 Wn.2d 460, 479, 901 P.2d 286 (1995).

[18] Id.

[19] State v. Hoffman, 116 Wn.2d 51, 99, 804 P.2d 577 (1991).

[20] Id. at 100.

[21] Mierz, 127 Wn.2d at 479 (emphasis added).

Myers claims that prior authority on the meaning of "official duties" is not controlling because Washington courts have not decided whether an officer may be considered to act in good faith while failing to respect the well-known and fundamental constitutional rights prohibiting entry into a person's *home* to make an arrest without a warrant or exigency. He points out that other cases involved crimes against officers who entered private property, rather than private homes, without a warrant.[22]

First, this is a distinction without a difference. Myers fails to offer a cogent explanation or any relevant authority to justify imposing restrictions on the definition of "official duties" based on whether an officer inadvertently infringes upon one particular constitutional right rather than another. Second, "[t]he lawfulness of an arrest only becomes a jury question if the issue is injected into the trial by reason of the charging language of the information, as, for example, when a defendant is charged with resisting 'lawful' apprehension."[23] The lawfulness of an arrest is *not* part of the charging information for assault in the third degree.[24] We reject the invitation to depart from Washington law.

Here, the State presented substantial, undisputed evidence that Officer Young was on duty as a patrol officer for the Marysville Police Department in the early morning hours of March 4, 2013; that his duties included responding to calls; that he was dispatched to Myers' apartment to respond to a report of a disturbance; that he

---

[22] Mierz, 127 Wn.2d at 463 (defendant assaulted Department of Wildlife agents who entered his yard without a warrant to seize coyotes); Hoffman, 116 Wn.2d at 99 (defendants shot tribal police officers who entered private property without a search warrant).

[23] Hoffman, 116 at 98.

[24] See id.; RCW 9A.36.031(1)(g); Clerk's Papers at 92.

identified himself as a police officer to Myers; that he spoke to Myers about the reason for the disturbance call and about the domestic violence report; that he placed Myers under arrest as requested by Officer Connelly; and that he used force to try to control Myers when he began to struggle against the officers. Myers does not identify any evidence in the record indicating that Officer Young had some other personal reason, separate from his job as a police officer, to act as he did, or that he intended to commit any kind of crime against Myers. Nothing in the record suggests that Officer Young decided to step inside the door of the apartment to make the arrest in bad faith or with malicious intent. There was no evidence whatsoever in this case to suggest that Officer Young was "on a frolic of his own" unrelated to his proper official duties as a Marysville police officer when Myers kicked him in the shin.[25] The State presented sufficient evidence to support the conviction.

Myers next claims he received ineffective assistance of counsel when his attorney failed to object to testimony from the officers indicating that he was mentally unstable and dangerous. In particular, defense counsel did not object when Officer Young testified that Myers said he was "bipolar" and "quad-polar"; that he spoke in a "really like crazy, maniacal voice"; that he denied being on medication; and that he made a stabbing motion with a pen and said, "Sometimes I want to kill everyone."[26] Counsel also failed to object when Sergeant Sparr testified that Myers "said he wouldn't have laid a hand on [his wife] and if he had, they'd be looking at a corpse."[27] Myers argues that counsel should have objected to the testimony as irrelevant, unduly

---

[25] See Hoffman, 116 Wn.2d at 99-100.

[26] RP (Dec. 2, 2013) at 110-11.

[27] Id. at 136.

prejudicial, and/or in violation of an order in limine preventing the defense from asserting a mental health defense. He also claims that no legitimate strategy justified counsel's failure to object.

Myers must show both deficient performance, i.e., that counsel's performance fell below an objective standard of reasonableness, and resulting prejudice.[28] Failure on either prong of the test defeats an ineffective assistance claim.[29]

Generally, the decision of when or whether to object to the admission of evidence "is a classic example of trial tactics" that does not support an ineffective assistance claim.[30] Exceptional deference is given "when evaluating counsel's strategic decisions."[31] "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[32] The tactic or strategy must be reasonable.[33]

The record reveals that the defense theory of the case was that Myers was so emotionally upset about his dispute with his wife, agitated about the confrontation with police, and drunk, that he was acting out of a kind of wild animal instinct rather than an intent to assault Officer Young. In response to the State's motion to exclude any mental health defense prior to trial, defense counsel stated that he planned to "elicit some

---

[28] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[29] Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984).

[30] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

[31] State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002); see also State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) ("There is a strong presumption that counsel's performance was reasonable.").

[32] Madison, 53 Wn. App. at 763.

[33] State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011).

testimony that [Myers] was a little bit incoherent, a little bit ranting and raving," but he did not "plan to characterize that as mentally ill."[34] And in his closing argument, defense counsel repeatedly compared Myers to a threatened or startled animal and argued that the State did not prove he acted intentionally when his foot came back toward the officer. Counsel also argued that Officer Young was so hypervigilant and so focused on his own safety that he could not view Myers' actions reasonably or objectively and exaggerated the incident. On this record, Myers cannot establish that defense counsel's decision not to object was unreasonable in light of his theory of the case. His ineffective assistance claim fails.

Finally, Myers contends that the sentencing court failed to obtain a presentence report and enter necessary findings, as required by RCW 9.94B.080, before imposing mental health evaluation and treatment as a condition of community custody.[35] The State concedes that the court did not obtain the required presentence report. We accept the State's concession.

In his statement of additional grounds for review, Myers contends that the State failed to present sufficient evidence to support his conviction because (1) there was no eyewitness testimony; (2) Officer Young failed to properly photograph or document his injury; (3) Officer Young did not seek medical attention or file a loss of wage report; (4) the State did not present any evidence of a weapon; (5) Officer Young "could have

---

[34] RP (Dec. 2, 2013) at 6.

[35] See RCW 9.94B.080; State v. Jones, 118 Wn. App. 199, 209-10, 76 P.3d 258 (2003).

been bumped or kicked by a fellow officer as they were in a frenzy";[36] and (6) Officer Young did not testify which leg was injured.[37]

But viewed in the light most favorable to the State, Officer Young's testimony that Myers repeatedly kicked backwards in a "downward stomp kind of motion,"[38] making contact with the officer's shin "pretty good a couple of times,"[39] would allow a rational trier of fact to find that Myers intentionally assaulted Officer Young. Myers fails to demonstrate any basis for relief.

We affirm the conviction, reverse the section of the judgment and sentence requiring a mental health evaluation and treatment as a condition of community custody, and remand for further proceedings consistent with this opinion.[40]

Cox, J.

WE CONCUR:

Trickey, J.

---

[36] Statement of Additional Grounds at 7.

[37] After filing a reply brief, counsel for Myers filed a motion to permit Myers to file a supplemental statement of additional grounds in reply to the State's brief. In response, the State asked this court to deny his motion as RAP 10.10 does not authorize such additional briefs. In this instance, we grant Myers' motion and have considered his supplemental statement of additional grounds.

[38] RP (Dec. 2, 2013) at 115.

[39] Id. at 116.

[40] See Jones, 118 Wn. App. at 212 n.33 (indicating, without deciding, that the statutory provision that the court "may order additional evaluations at a later date" may extend the authority to comply with RCW 9.94B.080 on remand).